TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0526
     Facsimile: (213) 894-6269
     E-mail:    Kristen.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-381-PSG |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; DECLARATION OF KRISTEN A. WILLIAMS & EXHIBITS A-D |
| v. | |
| STEVEN F. BROWN, | Hearing Date: June 28, 2021 |
| Defendant. | Hearing Time: 2:30PM<br>Location:     Courtroom of the Hon. Philip S. Gutierrez |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney ("AUSA") Kristen A. Williams, hereby files its sentencing position regarding defendant STEVEN F. BROWN.

This sentencing position is based upon the attached memorandum of points and authorities, the declaration of AUSA Williams and

//

exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 14, 2021          Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____
KRISTEN A. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

**Contents**

TABLE OF AUTHORITIES....................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.....................................1

I.    INTRODUCTION.......................................................1

II.   STATEMENT OF FACTS.................................................1

III.  THE PRESENTENCE REPORT.............................................4

IV.   ANALYSIS OF THE SECTION 3553(a) FACTORS............................5

      A.   A 51-Month Sentence Is Reasonable Given the Nature and
           Circumstances of the Offense and the History and
           Characteristics of Defendant..................................6

      B.   A 51-Month Sentence Is Reasonable Because It Reflects
           the Seriousness of the Offense and Affords Adequate
           Deterrence....................................................8

      C.   A 51-Month Sentence Is Reasonable Because It Does Not
           Create Unwarranted Sentencing Disparities....................10

      D.   The Remaining Section 3553(a) Factors Also Support the
           Sentence Requested by the Government.........................11

V.    CONCLUSION........................................................12

DECLARATION OF KRISTEN A. WILLIAMS......................................13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                    PAGE

**CASES**

Gall v. United States,
    552 U.S. 38, 54, 128 S. Ct. 586(2007)...........................10

United States v. Cantrell,
    433 F.3d 1269(9th Cir.2006).....................................5

United States v. Knows His Gun,
    438 F.3d 913(9th Cir. 2006).....................................5

United States v. Nichols,
    464 F.3d 1117(9th Cir.2006).....................................5

United States v. Treadwell,
    990 F.3d 990(9th Cir. 2010)....................................10

**STATUTES**

18 U.S.C. § 3553.......................................5, 6, 10, 11

**SENTENCING GUIDELINES**

U.S.S.G. § 2B1.1.................................................4

U.S.S.G. § 3B1.3.................................................4

U.S.S.G. § 3E1.1.................................................4

U.S.S.G. § 5B1.1................................................11

U.S.S.G. § 5C1.1................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Between April 2014 and May 2018, defendant STEVEN F. BROWN ("defendant") fraudulently induced victims to send him money for trading he was not licensed to do on their behalf, not very good at, and quickly abandoned.  The scam soon devolved into a Ponzi scheme, with new investors funding payouts for earlier investors, and was drawn out for years by the defendant's repeated promises of repayment and embezzlement from his employer.  For this conduct, defendant has pleaded guilty to wire fraud.  (CR 7.)

The government agrees with the United States Probation Officer's Guidelines calculation and recommended low-end Guidelines sentence of 51 months' imprisonment to be followed by a three-year term of supervised release, payment of a $100 special assessment, and payment of restitution in the amount of $3,313,346.35.  (Presentence Report ("PSR"), CR 29; USPO Rec. Ltr., CR 28.)  This sentence is reasonable and appropriate in light of defendant's multi-year scheme to defraud dozens of victims out of millions, funded in part by embezzlement from a non-profit organization that trusted in his stewardship of its limited funds.  The sentence also serves the goals of sentencing and is necessary to deter defendant from similar schemes, including one he attempted shortly after this one.

**II.  STATEMENT OF FACTS**

As described in the plea agreement's factual basis and in the charged information (CR 1, 7), defendant was the owner and operator of Alpha Trade Analytics, Inc. ("Alpha Trade"), a company he described at various points as a financial and investment strategy company, a software company, and, in contracts with victim-investors,

an investment fund. Neither defendant nor Alpha Trade were registered broker/dealers.[1] Defendant was also the accountant for a non-profit organization providing dance and theater arts education to children and young adults in the Los Angeles area (the "Dance Academy") and had access to its bank accounts.

Between in or around April 2014 and in or around May 2018, defendant solicited individuals to invest in Alpha Trade, promising he would use their funds for Forex trading, something at which he purported to be both experienced and successful. In fact, defendant had only just begun Forex trading and had been trading on a demonstration basis (<u>i.e.</u>, not with real money). He entered into agreements with these investors, making further false promises and representations, typically including that (1) the funds would remain theirs; (2) all losses would be borne by Alpha Trade; (3) the investments were vetted, insured, and/or bonded; and (4) investors would receive guaranteed monthly payouts (usually 10%).

From the very first investor, however, defendant knew his live Forex trading was not going well, and he soon relied on new investors to make his promised payouts to earlier ones. He nonetheless lulled victims into thinking their investments were thriving as promised by sending out fabricated account statements showing significant and steady gains that did not exist. Indeed, defendant had no real basis for these account statements, since he made little effort to track or segregate the investments coming in -- which he deposited into various Alpha Trade accounts that contained mixtures of investor and

---

[1] The Securities and Exchange Commission has filed a complaint against defendant concerning his violations of federal securities laws. See <u>SEC v. Steven Fitzgerald Brown</u>, CV 20-0858-PSG-PD, Dkt. 1. The matter is pending before this Court.

personal funds -- or trace what little trading he did to a particular investor's funds. Indeed, when applying for trading accounts, defendant at times indicated he was trading using his own assets, not those of third parties.

While some investors received payouts totaling their investment (or more), those payouts often came at the expense of later investors. Defendant also used some investor funds to pay his own personal expenses, including rent, car payments, and restaurants and retail expenses. To keep the scheme going, defendant embezzled nearly $700,000 from the Dance Academy through unauthorized wire transfers, credit card advances, and withdrawals between early 2017 and mid-2018, when his embezzlement was discovered and defendant was fired.

Over four years, defendant's conduct victimized dozens of individuals, some of whom lost hundreds of thousands of dollars. Defendant often encountered these individuals through the close-knit Dance Academy organization, whose well-regarded executives shared a close relationship with defendant. Some of these individuals placed so much trust in defendant that they recommended him to other friends and family, allowing defendant to benefit from the expanding circles of trust. Together, defendant agrees that his victims suffered actual losses of approximately $3.3 million.

To date, the government has received three victim impact statements. One of those contains an application for writ of attachment filed by victim "D.W." and is attached hereto as Exhibit A to the attached Declaration of Kristen A. Williams ("Williams

Decl.").[2] The filing details, among other things, D.W.'s $270,000 investment with defendant and Alpha Trade in February 2016, the fabricated account statements she received from defendant depicting "rosy and steady investment returns," defendant's return of $15,000 only after D.W. called to complain, and defendant's unfulfilled promise that the remainder of her investment would be returned to her by July 2018. (Exh. A at 19-23.) D.W. had expected to use her investment (which she believed to be valued at well over $400,000, based on the gains defendant had promised and his false representations in her account statements) for her retirement, but in the end was left with next to nothing. (Id. at 23-24, 68, 72.)

**III. THE PRESENTENCE REPORT**

In the PSR, the Probation Officer calculated a total offense level of 24 and a Criminal History Category of I. The Probation Officer's total offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Loss Between $1.5M and $3.5M: | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |
| More than 10 victims: | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)(i)] |
| Abuse of a Position of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 24 | |

(PSR ¶¶ 34-47.) Based on defendant's apparent lack of any qualifying criminal history, the Probation Officer also determined in the PSR that defendant has zero criminal history points and thus falls within

---

[2] The government anticipates seeking to file the other two statements under seal shortly.

Criminal History Category I. (PSR ¶ 53.) The Probation Officer recognized that a total offense level of 24 and a Criminal History Category of I result in an advisory Guidelines range of 51-63 months. (PSR ¶ 114.) In the letter accompanying the PSR, the Probation Officer recommended a sentence of 51 months' imprisonment for defendant. (USPO Rec. Ltr. at 2.) The Probation Officer also recommended a three-year term of supervised release and conditions, payment of a $100 special assessment, and payment of restitution in the amount of $3,313,346.35. (Id. at 1-3.) The government agrees with the Probation Officer's Guidelines calculation and recommendation.

## IV. ANALYSIS OF THE SECTION 3553(a) FACTORS

Based on a total offense level of 24 and a Criminal History Category of I, the applicable Guidelines sentencing range in this case is 51-63 months. While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in 18 U.S.C. § 3553(a). See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006). "To comply with the requirements of Booker, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

The Section 3553(a) factors are as follows:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –

    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) To afford adequate deterrence to criminal conduct;

    (C) To protect the public from further crimes of the defendant; and

    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for the offense and the defendant as set forth in the Sentencing Guidelines;

5) Any pertinent policy statement issued by the Sentencing Commission;

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a). The government believes that the factors set forth in 18 U.S.C. § 3553(a) would be satisfied by a 51-month sentence and that such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2), discussed further below. 18 U.S.C. § 3553(a).

**A. A 51-Month Sentence Is Reasonable Given the Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

Defendant engaged in a years-long fraud scheme that left dozens of victims with losses totaling over $3 million. The scheme was based on an initial lie -- that defendant was a proficient Forex

6

trader -- that defendant compounded through years of false guarantees and representations made both in person and through contracts and fabricated account statements regarding the security of and return on the money victims gave him. This led victims to keep their money with him (believing it was growing all the while) and led them to hold out hope (as they began to comprehend the fraud) that maybe they would receive something back. Many never did, or received only a fraction -- less than their investment, and certainly much less than the exorbitant gains defendant promised.

Defendant also had opportunities for steady employment, unlike many of the defendants this Court sees. Defendant has business and economics degrees and has been professionally employed in those fields for nearly two decades, including a lengthy period with the Dance Academy. (PSR ¶¶ 94-103.) This educational background and professional experience demonstrate that defendant had the means to earn a living legitimately, but instead chose to use those skills to commit fraud and poison his long-standing employment relationship.

In mitigation, defendant may point to his current alcohol abuse. (PSR ¶¶ 90-93.) However, there is nothing in the record suggesting that his alcohol consumption affected the initiation of the fraud scheme. Instead, the abuse is described as starting again in 2016, two years into this scheme and well after it was clear that defendant was lying to victims and making false promises on which he could never deliver. While the stress of his scheme unwinding and being fired for embezzlement may have led him to return to alcohol, the Bureau of Prisons is equipped to address substance abuse issues. Defendant's ability to maintain professional employment since 2016 despite this abuse further suggests that, with appropriate treatment,

he will be able to return to being a productive member of society once he has served his sentence.

Defendant may also point to the fact that he did not use the fraud proceeds to obtain the sorts of luxury goods sometimes seen in fraud cases. While it is true that the government is not aware of such extravagant purchases, it is also clear that defendant did use the scheme at least in part to pay for personal expenses like restaurant and retail charges, rent, and car expenses, among others. Also -- and perhaps more importantly -- defendant used the scheme to pose as a successful entrepreneur and thereby gain the respect and attention of those around him (many of whom were successful entrepreneurs themselves). That respect and attention appears to have significant personal value for defendant. (See PSR ¶ 85 (describing defendant's efforts to "catch up" to a more successful college friend); Exh. A at 36 (defendant informing a victim that he "love[s] talking to fellow entrepreneurs").)

Balancing the aggravating and mitigating factors in this case, a low-end Guidelines sentence remains appropriate.

**B.  A 51-Month Sentence Is Reasonable Because It Reflects the Seriousness of the Offense and Affords Adequate Deterrence**

Defendant's crime was financially serious, causing 48 victims to lose more than $3 million. Still other individuals may have received their initial investments back, but far less than the returns defendant guaranteed. Defendant's scheme was also emotionally devastating, as many of these victims trusted in defendant (or trusted in those who referred him) only to have that trust exploited. Those lucky enough to receive all or part of their money back or the promised payouts did so at the expense of others and of the Dance

8

Academy and its non-profit mission. A serious offense justifies a serious sentence, which a 51-month Guideline sentence accomplishes.

Additionally, defendant's conduct during and after the charged scheme demonstrates the need for a sentence that will deter defendant from similar conduct in the future. Defendant has admitted that his claims of Forex trading prowess and promises of high guaranteed returns were false almost from the outset. Nonetheless, he continued for years to solicit investors from a circle of friends and associates that trusted him, lulling them into a false sense of security with false account statements and promises of repayment. To keep the scheme going, defendant even turned to another crime: embezzlement from a non-profit that relies on the generosity of donors and good management of its resources to continue to provide valuable services to the community. Defendant's willingness to commit to the fraud scheme over several years and engage in other criminal conduct to keep it afloat supports the need for deterrence.

Moreover, even as the Alpha Trade scheme was falling apart, defendant was already embarking on a similar scheme through another company. Defendant has represented that he is currently employed by and receives most of his income from two corporations. (PSR ¶¶ 99 & n.2, 105 n.3.) One of those -- 2021, LLC[3] -- is corporation formed in December 2018 and involved in "Investments." (Exh. B to the Declaration of Kristen A. Williams ("Williams Decl.").) The corporate filings do not list defendant as an officer or member, but

---

[3] The PSR varies between "22021, LLC," and "2021, LLC." (See PSR ¶¶ 99 & n.2, 105 n.3.) Given that Alpha Trade produced documents related to 2021, LLC, and that company appears to be based in defendant's apartment, the government believes this corporation is in fact 2021, LLC.

9

the most recent October 2020 Statement of Information lists defendant's apartment as its business address. (Id.) 2021, LLC, has entered into contracts with investors, purporting to be a fund with a principal place of business at defendant's apartment and defendant listed as the fund manager. (Exh. C to the Williams Decl.) These contracts are very similar to those issued by Alpha Trade, well after that foray into the same type of investment management had led to a Ponzi scheme. (Compare id., with Exh. D (Alpha Trade contract for victim M.J.).)

Defendant's conduct in this case and with 2021, LLC, underscores the need for a significant sentence to deter him from this pattern of conduct, and to deter others from following a similar path.[4]

### C. A 51-Month Sentence Is Reasonable Because It Does Not Create Unwarranted Sentencing Disparities

Pursuant to 18 U.S.C. § 3553(a)(6), the Court is required to minimize sentencing disparity among similarly situated defendants. One way of doing so is to correctly calculate the Guidelines range. See United States v. Treadwell, 990 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); see also Gall v. United States, 552 U.S. 38, 54, 128 S. Ct. 586, 599 (2007)

---

[4] It is not clear what the other corporation defendant describes -- 3242, LLC -- does and whether its activities implicate the same need for deterrence. (See PSR ¶ 99.) Although defendant informed the Probation Officer that he had been employed by 3242, LLC since 2016 (id.), according to the California Secretary of State website, 3242, LLC, was not formed until November 2020. Those filings describe the corporation as a "Business Consultant," and lists defendant's apartment as its business address, although defendant does not appear on the corporate filings. (Williams Decl. ¶ 3.)

("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guidelines ranges.  Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."). Here, the Probation Officer has correctly calculated the Guidelines range, and the recommended sentence is within that range. Accordingly, a 51-month sentence for defendant is both appropriate and consistent with sentences of other similarly situated defendants.

### D. The Remaining Section 3553(a) Factors Also Support the Sentence Requested by the Government

Section 3553 (a)(3) requires the Court to consider the kinds of sentences available.  Given the nature of defendant's offense, any sentence that does not involve some period in custody would not be appropriate here.  In addition, defendant's crime falls within Zone D of the Sentencing Table, and non-custodial sentences are discouraged for such offenses.  See U.S.S.G. § 5C1.1(f); U.S.S.G. § 5B1.1 cmt. n.2; PSR ¶ 119.  Furthermore, the public interest in satisfying the other Section 3553(a) factors of obtaining a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of defendant outweighs any interest in having defendant avoid time in custody.

Sections 3553(a)(4) and (5) require the Court to treat the Guidelines as merely "advisory" but to take them into consideration nonetheless, as the government has done herein and as the Probation Officer did in the PSR.

11

Finally, under 18 U.S.C. § 3553(a)(7), the Court is required to consider the need to provide restitution to the victims of the offense. As noted above, the Probation Officer has calculated a restitution amount for this case, and the government agrees that this amount is correct and respectfully requests that that the Court order defendant to pay $3,313,346.35 in restitution.

**V.   CONCLUSION**

For the foregoing reasons, the government objects to the PSR and respectfully submits that the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence that includes a 51-month term of imprisonment, a three-year period of supervised release and conditions, payment of a $100 special assessment, and payment of restitution in the amount of $3,313,346.35.

**DECLARATION OF KRISTEN A. WILLIAMS**

I, Kristen A. Williams, declare as follows:

1. I am an Assistant United States Attorney ("AUSA") for the Central District of California. I represent the government in <u>United States v. Steven F. Brown</u>, CR 20-381-PSG. I make this declaration in support of the Government's Sentencing Position.

2. The following are true and correct copies of the following documents, redacted as appropriate:

    a. **Exhibit A** is an application for writ of attachment filed by victim D.W. in Los Angeles Superior Court (Case No. SC 129609), provided to the government as a victim impact statement for D.W. and previously produced in discovery (Bates No. BROWN_010568-BROWN_010629);

    b. **Exhibit B** contains documents (1) produced by Alpha Trade Analytics, Inc. ("Alpha Trade") pursuant to a subpoena in this case (Bates No. BROWN_008565-BROWN_008570) and (2) downloaded from the California Secretary of State website (https://businesssearch.sos.ca.gov/) on June 13, 2020 (October 21, 2020 Statement of Information);

    c. **Exhibit C** is a 2021, LLC Membership Agreement for C.W. produced by Alpha Trade in this case (Bates No. BROWN_008594-BROWN_008597); and

    d. **Exhibit D** is an Alpha Trade Membership Agreement for M.J., produced by Alpha Trade in this case (Bates No. BROWN_004152-BROWN_004155).

3. Based on my review of the California Secretary of State website on June 13, 2020, I am informed and believe that the corporation 3242, LLC, was formed in November 2020. Secretary of

13

State filings describe the corporation as a "Business Consultant," and list defendant STEVEN F. BROWN's apartment as its business address, although defendant does not appear on the corporate filings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on June 14, 2021.

_____
KRISTEN A. WILLIAMS

14